Our fourth case for this morning is Spiller v. United States, and Ms. Graham, we'll hear from you when you're ready. Good morning, Your Honors. Good morning. May it please the Court. In this case, Mr. Spiller's trial counsel advised him to plead guilty to three felony offenses instead of taking the government's plea offer, under which he'd plead guilty to one felony offense. And in this case, Your Honor, the government in essence concedes that this advice was prejudicial. After all, Mr. Spiller was sentenced to two additional felonies. Now, wouldn't that have been relevant conduct? He was supposed to admit to the facts underlying the other two, right? Correct. Under, yes, he would have admitted, under the plea agreement, he would have admitted to the facts, but not the, he would not have received the conviction. Similarly, when he pleaded guilty to three felony offenses, he, again, admitted to all of the facts. So, if I can summarize the differences, I mean, counsel asks, hey, what's the point of this, you know, proposed plea agreement? Which seemed to me a reasonable enough question to ask the government. But in your view, the differences are, number one, there are two additional formal, and I'll call it felony convictions. I suppose if he has missteps in the future, they would be part of his criminal history. Number two, he's got the two extra special assessments, so $200 gets paid. You mentioned, number three, I think the possibility of his participating in the drug program in the prisons, and I'm not sure whether there's anything else, but maybe you can tell me. We know in sentencing that the fact that Mr. Spiller was convicted of a gun crime did play very heavily on the court's mind. The court referred to it as the worst. Mr. Spiller would not have been convicted of that crime, but you're right, Your Honor, the major prejudice that was suffered here was two additional felony convictions. The Ball case, which is cited by the government, addresses the fact that extra convictions, even if the sentence is the same in length, extra convictions are prejudicial and they come with collateral consequences. So I think at this point we can take the government at its word that these two convictions and the special assessments in and of themselves were prejudicial. So at that point, we turn to the question about performance of counsel, whether counsel's performance was deficient when she made this recommendation. And I'm not asking the court to determine that it was on this record. What I'm asking for is much more modest. It's simply an evidentiary hearing under which counsel's strategic reasons or perhaps lack thereof could be explored at the district court level. In this case, Your Honor, the district court denied this petition without holding an evidentiary hearing and we believe that that was a significant misstep. Well, the district judge was pretty familiar with this case and found no reasonable probability of a better outcome, materially better outcome, $200 by a guy who was about $14,000 underwater at the time of sentencing, right? That's trivial in his situation. Who would know better than the district judge? The district judge is certainly familiar with the record and that we certainly concede. But there is the fact of two extra convictions. There's the Ball case. If counsel is in a position where she's weighing between two pleas which are otherwise exactly the same and will lead to the same consequences, then it does seem deficient to recommend to your client to take the one that will lead to three felony convictions, including a gun conviction, rather than the one. So let me ask you whether you are pressing the argument that the district judge, looking at the plea offer, made a mistake of law under Frye by thinking that it needed to have a fixed expiration date. We do believe that this was error. That is fleshed out in the brief. The government doesn't appear to take issue with our argument and says it doesn't matter for purposes of the analysis. If this court wishes to address that issue, we believe it's spelled out very fully in the Martin decision, which I believe was Seventh Circuit precedent. In this case, the plea offer, it was essentially, it wasn't signed, but it was essentially sealed and delivered. This is not a case where, as in Frye, I believe, there was some speculation as to whether there was truly an offer on the table. Right. Or still an offer. I mean, the reason I raise it is because I'm just trying to tease out the extent to which the district judge was motivated by thinking that it really wasn't a plea offer situation anyway. It was just this plea declaration that Mr. Spiller winds up filing. That would be one scenario. The other scenario, yes, it's a plea offer, and I'm just going to compare what the terms are in the two. I do believe it's not entirely clear when you look at the district court's decision how much the district court felt, well, I don't have to consider very carefully whether there was prejudice or deficient performance because there's a threshold barrier here that Mr. Spiller doesn't meet. I do think that that is a concern. When you look at the decision, the court doesn't seem to, the court ended up speculating about counsel's motivations for recommending the blind plea rather than recommending the government's plea offer, and we submit that that speculation is improper in this case, and perhaps it's true that the district court felt maybe a little more latitude to speculate because of the concern about whether the plea offer was legitimate in the first place or a proper plea offer. This court has been very clear that it is, that district courts should not give deference to strategic decisions when there's nothing in the record to suggest how or whether that strategic decision was made, but that's what the district court, I believe, did here. In this case, we don't know why counsel recommended a blind plea. All we know is what Mr. Spiller has stated, which is that he would get a better sentence by pleading blind to three felonies rather than taking the government's plea offer for the one. We do know that the district court speculated, well, perhaps counsel wanted to reserve the right to contest that Spiller was not a career offender, and if that was indeed counsel's thought, that might be a fair strategy. However, as we know from this court's precedent, counsel would have to do a reasonable investigation of the facts and the law and make a reasonable determination that she would actually be able to make that argument at sentencing. And here in this case, we don't know whether she did that investigation. All we know is when it came to sentencing, she didn't actually advance that argument. She didn't make any argument that she wouldn't have been able to make had Mr. Spiller taken the government's plea offer. So in that respect... It certainly seems like that would have been a tough one to make, actually, given Mr. Spiller's background. Your Honor, it's not clear in this record whether she could have or could have not made that argument. All we know at this point is that she did not. And so the court's reliance on reserving a right that wasn't actually exercised, that's not enough to suggest that Mr. Spiller should not be given an evidentiary hearing. Is it correct that the sentence imposed was below the guideline range? Yes, it is, Your Honor.  And with that, I will reserve... All right. You can save the rest of your time. That's fine. Thank you. Mr. Fullerton. Good morning. Good morning. May it please the court. The district court properly denied the 2255 petition here and properly did so without a hearing. Ms. Graham this morning said one thing that I think is in error, that the plea declaration and the plea offer were otherwise exactly the same, with the exception of the $200 and the two extra counts of conviction that came with the proposed plea agreement. And that's not quite true because the plea agreement called for the parties to agree that the career offender guideline applied. The plea declaration did not do so. But, you know, as compared to other things that differ, that strikes me as, again, given Mr. Spiller's background, a trivial difference. Now I've seen situations, not this plea agreement, but I've seen situations where the plea agreement for example includes a broad-based waiver of both appellate and 2255 rights. And in those instances, even if the government agrees in the plea agreement to a plea on one count and that it's going to drop the other counts, some defendants prefer a blind plea because they're preserving the right to take an appeal. They're preserving the right to bring a 2255. But page 17 of this agreement, in paragraph 19b, makes it very clear that this is not one of those agreements. This is just, you know, you can't appeal things that would have happened at the trial because there isn't going to be a trial. Right. There was no appellate waiver. There was no 2255 waiver. Right. Which makes it very much, I mean I've looked at these, very much like this plea declaration except that it's three felony convictions. It's not just the extra $200, which by the way, we often say is enough to justify let's say vacating the conviction on one count even if they're concurrent sentences. We say that still leaves you enough stake in the matter. Your Honor, I think you're right. I think a lawyer could give deficient advice that led to a prejudice consisting of extra special assessments, extra counts of conviction. And that's what this is. Right. But the difference between the plea declaration and the plea agreement that was on offer was enough to justify the decision to choose the plea declaration as a tactical strategic choice. How do we know, other than pure speculation, that this was the tactical decision the lawyer made when in the end having, as under your theory, reserved the right to challenge career offender, no such challenge is brought? Well, looking at it at the time of the plea is different from looking at it in hindsight after the sentencing. At the time of the plea, no PSR had come out, probation had not weighed in on whether or not he was in fact a career offender. The details of his criminal convictions may not have been known to everybody. And keep in mind that- But how much speculation is permitted? Why didn't the district judge just take a brief time and ask the lawyer? That's why you have 2255s. Well, I don't think a hearing was called for because the choice- Well, I say it's- You're guessing. Objectively a tactical, reasonable choice. You have scoured the record and you have found the only thing that might possibly justify turning away from this plea agreement, which by the way in paragraph 16, as you probably remember, the government will move to dismiss the remaining counts of the indictment as the defendant. That's value. Right. Well, keep in mind that Gilbert Spiller was not going to go to trial. He was on tape. He was on video. Yeah, but Lafleur and Fry both deal with that, right? All people like Gilbert Spiller. He was going to plead guilty. Whether it was going to be a declaration or a plea agreement, the government was not going to be offering him much by way of concession. So doesn't it make the little teeny concession that this plea agreement offers, like we're going to wipe out the gun charge, it's still relevant conduct. I get that, but it's not a gun conviction. Those matter. It can have consequences. That's right. But in advance of sentencing, when the PSR has not come out, counsel could reasonably, in an objective sense, choose to reserve the right to contest career offender, even though there was this additional $200 that Spiller was probably never going to pay and the two additional counts of conviction. That was where the drastic increase in Spiller's sentence came from. It was really the engine that drove his guidelines up to 262 months in the low end. She did get a significant discount for him at sentencing. It went down to 240, right? Down to 240. Do we have, with respect to the residential drug abuse treatment program, do we have evidence that he actually had a drug abuse problem himself? I don't think that was established. The regulation makes it very clear that a firearm conviction will disqualify somebody, but is a conviction necessary, or would the PSR information about the gun count be enough to disqualify? Well, the regulation that we quoted in our brief speaks about conviction. It does, but looking beyond just that text, there are some courts around the country that have said, look, the BOP can deny eligibility and should deny eligibility if they've got that information. That may be a reason to deny it. If under the proposed plea agreement, he would have agreed that he had committed that conduct. I don't know. I didn't go into it far enough to determine whether that would be a basis for denying participation in the drug treatment program, but that was a speculative benefit. You'd have to get into it. You'd have to qualify. You'd have to complete it successfully, and so on. Complete it, and you'd have to have the problem, get into it, and successfully complete it in order to get the benefit that he was talking about. Although it was a cocaine-based conviction. Right, distribution. Yeah. And, by the way, that was not in a... It's basically an ounce, right, 28 grams. Yeah, that was not a claim of prejudice. It was made by spilling in the district court, so it was forfeited, and we can't say that it was plain error for the district court to not, on its own, come up with this as a basis of prejudice.  No, is the attorney giving him proper advice when the question on the table is, should this plea agreement, which was properly transmitted, which is reproduced here in the appendix, is this the better deal for him? And if the attorney is asleep at the switch, then there could be prejudice from failing. I mean, the Supreme Court has recognized that the criminal law is all about plea agreements. I acknowledge that there is some basis for thinking that the plea offer was better. However, the district court said, I find that you would not have, you, Gilbert Spiller, would not have done better under the plea agreement as opposed to the plea declaration. And he based that on the attorney's performance overall in the case and the attorney's performance at sentencing, knowing, having in mind... But done better, the judge seems to think that it really doesn't make any difference to have two extra convictions, and I'm not sure why that's true. Sentence-wise, number of months, I can see why, if the judge is just focusing on how long am I going to send this person away for, I think I'm happy to buy that idea, because there was no difference in the range in the end. But I'm very bothered by the two extra convictions. Well, that's assuming, Your Honor, that Spiller would have received the same sentence of term of incarceration if he had taken the plea offer. Why would he have been worse off? Well, counsel could have thought that by agreeing, could reasonably have thought that by agreeing that the career offender guideline was applicable, that she was binding Spiller to that guideline in a way that she was not doing so by entering the plea declaration. So we think that district court properly denied the petition and properly did so without a hearing. Okay. If the court has no more questions, we ask that this court affirm. Thank you. Anything further, Ms. Graham? Your Honor, I believe this case truly illustrates the need to have an evidentiary hearing in cases like this. In this case, we have a lot of speculation. We have this district court speculating about what happened, the government saying the attorney could have thought that one thing was better than the other. This court has been very clear and also the habeas standard is very clear that unless the petition conclusively shows that Spiller is not entitled to relief, the court is to set up for a hearing where these issues can be explored. Ms. Graham, you make the claim that the email to the government suggests that the counsel was unaware, perhaps, of the ramifications. But isn't the email itself evidence that the counsel did the research, raised the question of the difference between the agreement and the plea, and got a response? It is evidence that counsel did something when she received the plea agreement to evaluate it. It is not evidence that she did what the district court said she did, which is intend to reserve the right to challenge the career offender. There is no indication that she did that. But her receiving those response, as a defense counsel, wouldn't she have analyzed that and having raised the question, gotten a direct answer from the government? Why would we presume she, having received that, didn't make a reasoned judgment? You would hope that she analyzed that. There is simply nothing in the record suggesting that she did or did not, and that is why we need an evidentiary hearing. Well, but she sent the email. She raised the question. She got the answer. We are to speculate that she didn't digest that and come up with a decision that was appropriate in those circumstances? The email does not say that she was considering whether she could contest the career offender designation or not. It simply says, is there something that I'm missing by evaluating this plea vis-a-vis the other option? Thank you, Your Honors. Thank you very much, and thank you as well for taking the appointment. The court appreciates this very much, for your client, for ourselves. Thanks as well to the government. We'll take the case under advisement.